CHAD MIZELLE
Acting Associate Attorney General
ABHISHEK KAMBLI
Deputy Associate Attorney General
BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
ELIANIS N. PEREZ
Assistant Director
LUZ M. RESTREPO
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## MINNEAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TIM WALZ, the Governor of Minnesota in his official capacity; STATE OF MINNESOTA; KEITH ELLISON, Attorney General for the State of Minesota in his official capacity; MINNESOTA OFFICE OF HIGHER EDUCATION,<br><br>　　　　　Defendants. | CIVIL No. _____<br><br>**COMPLAINT** |

　　Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

Federal law prohibits States from providing aliens not lawfully present in the United States with any postsecondary education benefit that is denied to U.S. citizens. *See* 8 U.S.C. § 1623(a). That prohibition is categorical (*id.*), yet Minnesota is flagrantly violating it. This Court should put an end to this unequal treatment of Americans that is an unequivocal and ongoing violation of federal law by entering a permanent injunction against the enforcement of Minnesota State laws that mandate the grant of unlawful state benefits to aliens not lawfully present in the United States. These provisions are preempted by federal law and are thus unlawful. *See* Minn. Stat. §§ 135A.043, 136A.1465; *see also* U.S. Const. art. VI, cl. 2; *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.").

Sections 135A.043 and 136A.1465 of the Minnesota statutes explicitly classify aliens who are not lawfully present in the United States as residents under certain conditions, and thus eligible for reduced tuition and free tuition, respectively, for public state colleges while U.S. citizens from other states must pay higher out-of-state tuition rates and are ineligible for the free tuition. This discriminatory treatment in favor of aliens not lawfully present in the United States over U.S. citizens is squarely prohibited and preempted by federal law, which provides that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State … for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit … without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). The challenged Minnesota statutes, as applied to aliens not lawfully present in the United States, thus violate the Supremacy Clause of the United States Constitution. This Court should declare Minnesota's laws, as applied to aliens not lawfully present in the United States, preempted and permanently enjoin their enforcement.

2

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events occurred in this district.

3. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

**PARTIES**

4. Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive agencies, including the Department of Justice and Department of Homeland Security (DHS), as well as DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5. Defendant Tim Walz is the Governor of Minnesota and is sued in his official capacity.

6. Defendant State of Minnesota is a state of the United States.

7. Defendant Keith Ellison is the Attorney General for the State of Minnesota and is sued in his official capacity.

8. Defendant Minnesota Office of Higher Education (OHE) is a state agency created by state statute and is charged with making financial aid programs as well as in-state tuition accessible to qualifying students and helping students to gain access to postsecondary education, among other things. *See* Minn. Stat. § 136A.01; https://www.ohe.state.mn.us/mPg.cfm?pageID=894 (last visited June 23, 2025); *see also*

3

https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025) (making available on OHE's website the Minnesota Dream Act State Financial Aid Application and stating specifically that the application must be completed in order to qualify for state grants and reduced in-state tuition rates at eligible public state universities).

## FEDERAL LAW

9. The Constitution empowers Congress to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The Constitution also vests the President of the United States with the "executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

10. The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding Supreme Court precedent.

11. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws.

12. In Executive Order 14218 of February 19, 2025, *Ending Taxpayer Subsidization of Open Borders*, President Trump ordered Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]" In Executive Order 14287 of April 28, 2025, *Protecting American Communities From Criminal Aliens*, President Trump ordered the relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful,

preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens[.]"

13. These Orders derive from the President's statutory and constitutional authority to carry out and execute the prohibitions in 8 U.S.C. § 1623(a) against "not lawfully present" aliens receiving "eligib[ility] on the basis of residence within a State ... for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit ... without regard to whether the citizen or national is such a resident." The Orders reinforce congressionally authorized and enacted provisions underscoring and mandating that the Federal and state governments must not treat Americans unequally to aliens not lawfully present in the United States for eligibility of benefits. They also reiterate congressional intent, evidenced in several statutory provisions of the Immigration and Nationality Act (INA), to curb incentives for illegal immigration provided by the availability of various public benefits.

14. Specifically, in 1996, Congress passed, and President Bill Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IRRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). One of the objectives of that statute was to promote immigrant self-sufficiency, reduce immigrant reliance on public assistance, and ensure that public benefits are not incentives to enter illegally. *Id.*; *see* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

15. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id.* § 1601(2)(A).

16. Congress emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B). Moreover, Congress established that, as a matter of public policy, there "is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

17. As relevant here, IIRIRA includes a clear "[l]imitation on eligibility preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

18. Section 1623(a) thus does not allow for states to provide illegal aliens with lower in-state tuition rates (also referred to as "resident tuition") based on residence within the state if that same tuition rate is not made available to all U.S. citizens without regard to their state residency. 8 U.S.C. § 1623(a).

19. Minnesota's flagrant and ongoing violation of this prohibition is challenged by this suit.

## THE MINNESOTA LAWS

20. In direct conflict with federal law, Minnesota law permits an alien who is not lawfully present in the United States to qualify for reduced in-state tuition rates and for free tuition

6

based on residence within the state. *See* Minn. Stat. §§ 135A.043, 136A.1465. At the same time, it denies these benefits to U.S. citizens who do not qualify as Minnesota residents. *See id.*

Minn. Stat. § 135A.043

21. Since 2013, Minnesota law[1] has allowed aliens not lawfully present in the United States who establish residency in Minnesota under Minn. Stat. § 136A.101 (which references § 135A.043) to benefit from reduced, in-state tuition rates while denying that same benefit to U.S. citizens who are not residents of Minnesota. *See* Laws of Minnesota 2013, ch. 99, art. 4.

22. Minn. Stat. § 136A.101, Subdivision 8, enumerates several ways an individual could qualify as a "resident student," including a student that is "eligible for resident tuition under section 135A.043."

23. Minn. Stat. § 135A.043, titled "Resident tuition" provides that:

> (a) A student, other than a nonimmigrant alien within the meaning of United States Code, title 8, section 1101, subsection(a), paragraph (15), shall qualify for a *resident tuition rate* or its equivalent at state universities and colleges if the student meets all of the following requirements:
> 1. high school attendance within the state for three or more years;
> 2. graduation from a state high school or attainment within the state of the equivalent of high school graduation; and
> 3. in the case of *a student without lawful immigration status*: (i) documentation that the student has complied with selective service registration requirements; and (ii) if a federal process exists for the student to obtain lawful immigration status, the student must present the higher education institution with documentation from federal immigration authorities that the student has filed an application to obtain lawful immigration status.

---

[1] The Minnesota Dream Act, also known as the Minnesota Prosperity Act, was signed into law in 2013 as part of an omnibus higher education bill, which grants eligible student aliens not lawfully present in the United States, including Deferred Action for Children Arrivals recipients, with access to in-state tuition rates public colleges and universities. *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025).

7

(emphases added).

24. As evidenced above, Minnesota law does not require lawful presence in the United States to establish Minnesota residency and obtain in-state tuition rates. In fact, Minnesota law explicitly permits aliens without lawful immigration status to qualify as "resident students" and to receive reduced in-state tuition if they meet the three specific criteria listed in § 135A.043. *See* Minn. Stat. §§ 135A.043, 136A.101.

25. Notably, one of the three criteria is that a student without lawful immigration status must present documentation that the student has complied with selective service registration requirements. Minn. Stat. § 135A.043(a)(3). While aliens without lawful status are required under federal law to register for selective service, this registration does not grant them legal status. *See* 50 U.S.C. § 3802(a).

26. As to Minn. Stat. § 135A.043(a)(3)'s requirement that a student without lawful immigration status present documentation that the student has filed an application to obtain lawful immigration status if a federal process exists to do so, the OHE states on its website that "[t]here is currently not a federal process in place, so this documentation is not currently required." *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025).

27. The availability of reduced in-state tuition to aliens not lawfully present in the United States is also advertised on a public facing website where the OHE expressly states "[t]he MN Dream Act way of establishing residency does not require a student to have Deferred Action for Children Arrivals (DACA) *or any other lawfully present or legal status.*" *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited June 23, 2025) (emphasis added).

28. Accordingly, under this Minnesota law, the tuition rate for an alien not lawfully present in the United States who meets § 135A.043's three criteria is the same as for other Minnesota residents. Conversely, U.S. citizens that do not qualify as Minnesota residents under § 135A.043 are forced to pay higher, nonresident tuition.

29. The magnitude of this discrimination against U.S. citizens is substantial. The cost of tuition for resident students is *significantly* lower than for U.S. citizens that are not in-state residents. For example, at the University of Minnesota-Twin Cities, during the 2023-2024 school year, undergraduate tuition and fees were $16,488 for in-state students; but they were more than *twice* that—$36,402—for out-of-state students. *See* https://nces.ed.gov/collegenavigator/?s=MN&ct=1+2+3&ic=1+2+3&pg=7&id=174066#expenses (last visited June 23, 2025). The estimated undergraduate cost of tuition and fees for the 2025-2026 school year is $18,094 for Minnesota residents, and $40,556 for out-of-state students. *See* https://admissions.tc.umn.edu/cost-aid/cost-aid-scholarships/cost-attendance (last visited June 23, 2025).

30. Out-of-state American citizens therefore pay substantially higher tuition than aliens who are not lawfully present in the United States but meet the Minnesota residency requirement under § 135A.043.

31. While certain public colleges and universities in Minnesota offer access to reduced in-state tuition to all students regardless of their immigration status or state of residence, and while Minnesota has reciprocity agreements with some neighboring states, no other U.S. citizen can get reduced in-state tuition outside these limited allowances. *See* https://www.ohe.state.mn.us/mPg.cfm?pageID=1586 (last visited June 23, 2025); https://www.ohe.state.mn.us/mPg.cfm?pageID=97 (last visited June 23, 2025).

32. For the year 2022, there were approximately 408,000 student aliens without lawful presence enrolled in U.S. institutions of higher education. *See* https://www.higheredimmigrationportal.org/state/minnesota/ (last visited June 23, 2025); *see also* https://www.higheredimmigrationportal.org/wp-content/uploads/2025/04/Undocumented-Students-in-Higher-Education-June-2024-2-pager-corrected.pdf (last visited June 23, 2025). Many of those unlawfully present alien students attended public universities in Minnesota.

Minn. Stat. § 136A.1465

33. More recently, the Minnesota legislature passed, and Governor Walz signed into law, Minn. Stat. § 136A.1465 in 2023; it took effect on July 1, 2024. *See* Laws of Minnesota 2023, ch. 41, art. 2, § 19; *see also* https://www.house.mn.gov/hrd/pubs/ss/ssnsprom.pdf (last visited June 23, 2025). This law created the North Star Promise Program, a state-funded financial aid program administered by the OHE that awards free tuition and fees in the form of a scholarship to eligible students who attend Minnesota's public postsecondary institutions beginning in the fall term of the 2024-2025 academic year. *See* https://www.house.mn.gov/hrd/pubs/ss/ssnsprom.pdf (last visited June 23, 2025); Minn. Stat. § 136A.1465.

34. The scholarship covers any leftover tuition and fees that have not already been covered by other gift aid sources, namely federal, state, private or institutional grants, scholarships, and tuition waivers (not but not loans or work study sources of income). *Id*. If there are no gift aid sources, the scholarship covers 100 percent of tuition and fees. *Id*. Additionally, a student eligible for the program can receive a supplementary award equaling up to 50 percent of a federal Pell grant. *Id*.

35. In order to qualify for the state-funded free tuition scholarship, a student must meet several criteria, including completing a Free Application for Federal Student Aid (FAFSA) or a

10

state aid application,[2] having an annual family adjusted gross income below $80,000, and being enrolled in any public postsecondary educational institution, among other things. *Id.*

36. Critically, to qualify for the free tuition scholarship, Minn. Stat. § 136A.1465 also requires that the student meet the definition of "a resident student under section 136A.101, subdivision 8." As discussed at paragraph 22 of the instant Complaint, § 136A.101, Subdivision 8, defines "resident student" as "a student eligible for resident tuition under section 135A.043." Minn. Stat. § 136A.101. In turn, § 135A.043 expressly permits aliens without lawful presence in the United States to qualify as "resident students" so long as they meet the enumerated criteria listed at paragraph 23 of the instant Complaint. Minn. Stat. § 135A.043(a)(3).

37. Minnesota law thus awards free tuition and fees to aliens not lawfully present in the United States who meet the definition of "resident students" but discriminates against U.S. citizens by excluding them from eligibility for this financially significant award if they do not qualify as Minnesota residents. *See* Minn. Stat. §§ 135A.043, 136A.101, 136A.1465.

## THE CHALLENGED MINNESOTA STATUTES ARE PREEMPTED

38. The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

---

[2] Although not referenced in Minn. Stat. § 136A.1465, the OHE's public-facing website lists the Minnesota Dream Act Application as one of the forms that a student can complete to qualify for the scholarship. *See* https://www.ohe.state.mn.us/sPages/northstarpromise.cfm (last visited June 23, 2025) (directing students who are undocumented to complete the Minnesota Dream Act application in order to apply for free college tuition through North Star Promise).

39. Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

40. Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona*, 567 U.S. at 399; *WinRed, Inc. v. Ellison*, 59 F.4th 934, 942 (8th Cir. 2023) ("Interpreting an express preemption provision, this court 'focu[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.") (citing *Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017)) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 124 (2016)).

41. "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. National Solid Wastes Management Assn.*, 505 U.S. 88, 108 (1992); *see Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect."); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same); *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009) (federal statute expressly preempts a state law when Congress "defin[es] the scope of preemption" (citation omitted)).

42. When the statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico*, 579 U.S. at 125. Further, in determining whether a state law or regulation is preempted, "congressional purpose is 'the ultimate touchstone' …." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 792 (8th Cir. 2010) (citation omitted); *see Malone v.*

*White Motor Corp.*, 435 U.S. 497, 504 (1978) ("'The purpose of Congress is the ultimate touchstone'" of pre-emption analysis.") (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

43. Here, the federal law—namely, 8 U.S.C. § 1623(a) explicitly overrides state resident tuition benefits for aliens not lawfully present in the United States. The Fifth Circuit has already held as much in *Young Conservatives of Texas Foundation v. Smatresk*, stating that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th 304, 312-13 (5th Cir. 2023). *See also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state tuition, that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit").

44. Moreover, with respect to the issue of reduced in-state tuition, a federal district court recently declared preempted under 8 U.S.C. § 1623(a) a Texas law permitting aliens not lawfully present in the United States to qualify as Texas residents eligible for in-state tuition if they meet the following: (1) they establish and maintain domicile continuously *or* graduate from a public or private school or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period of time and (2) submits an affidavit stating that the person will apply to become a permanent resident in the U.S. as soon as the person becomes eligible to apply. *See* Exhibit A (Complaint and Order and Final Judgement, *United States v. Texas*, No. 25-cv-00055 (N.D. Tex. Jun. 4, 2025)).

45. Section 1623(a) directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a

State ... for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit ... without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

46. As evidenced in the title, "Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," Section 1623(a) requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any alien not lawfully present in the United States can be eligible to receive the same benefit (based on residency).

47. Therefore, the federal statute, 8 U.S.C. § 1623(a), preempts Minnesota's statutes that grant benefits to aliens not lawfully present in the United States when U.S. citizens do not receive the same. *See* Minn. Stat. §§ 135A.043, 136A.1465.

48. By bestowing greater education benefits on aliens not lawfully present in the United States than U.S. citizens, Minn. Stat. § 135A0.43 and Minn. Stat. § 136A.1465 are preempted and therefore violate the Supremacy Clause.

## CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE
### (EXPRESS PREEMPTION)

49. Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

50. The challenged provisions of Minn. Stat. § 135A.043 and Minn. Stat. § 136A.1465, as applied to aliens who are not lawfully present in the United States, expressly violate federal immigration law's prohibition on providing postsecondary education benefits—such as lower tuition rates and free tuition—based on residency to aliens not lawfully present in the United States that are not available to all U.S. citizens regardless of residency.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1. that this Court enter a judgment declaring that the challenged provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are therefore unconstitutional and invalid;

2. that this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing the challenged provisions as applied to aliens who are not lawfully present in the United States;

3. that this Court award the United States its costs and fees in this action; and

4. that this Court award any other relief it deems just and proper.

DATED: June 25, 2025                    Respectfully submitted,

CHAD MIZELLE                            LUZ MARIA RESTREPO
Acting Associate Attorney General       Trial Attorney

ABHISHEK S. KAMBLI                      */s/ Elianis N. Pérez*
Deputy Associate Attorney General       ELIANIS N. PÉREZ
                                        Assistant Director
BRETT A. SHUMATE                        United States Department of Justice
Assistant Attorney General              Office of Immigration Litigation
Civil Division                          General Litigation and Appeals Section
                                        P.O. Box 868, Ben Franklin Station
YAAKOV M. ROTH                          Washington, D.C. 20044
Principal Deputy Assistant Attorney General   Fax: (202) 305-7000
Civil Division                          Telephone: (202) 616-9124
                                        Email: elianis.perez@usdoj.gov

                                        *Attorneys for the United States*