UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>TIM WALZ, the Governor of Minnesota in his official capacity; STATE OF MINNESOTA; KEITH ELLISON, Attorney General for the State of Minesota in his official capacity; MINNESOTA OFFICE OF HIGHER EDUCATION,<br><br>               Defendants. | CIVIL No. 25-cv-02668-KMM-DTS |

## PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I.    INTRODUCTION

Defendants' Motion to Dismiss attempts to obfuscate the obvious: Federal immigration law expressly preempts the challenged Minnesota Statutes. The state statutes, Minn. Stat. §§ 135A.043(a), 136A.1465, are invalid under the Supremacy Clause because they impermissibly allow an "alien who is not lawfully present in the United States" ("illegal aliens") to benefit from reduced tuition and free tuition at public state colleges while U.S. citizens from other states must pay higher out-of-state tuition rates and are ineligible for free tuition in violation of 8 U.S.C. § 1623(a) ("Section 1623(a)").

The United States also has standing to sue all named Defendants including, Governor Tim Walz and Attorney General Keith Ellison, because they enforce the challenged

Minnesota statutes, and because the Federal Government's injury is judicially redressable by enjoining them from such enforcement.

Since Section 1623(a) expressly preempts Minn. Stat. §§ 135A.043(a), 136A.1465, this Court should deny Defendants' Motion to Dismiss.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In September 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which sought to disincentivize illegal immigration. *See* Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996); *see also* Memorandum for the Heads of Exec. Dep't on Deterring Illegal Immigration, 60 Fed. Reg. 7885 (Feb. 7, 1995). One of the provisions under IIRIRA is Section § 1623(a). The language of this provision is straightforward:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). The statute's plain language clearly prohibits illegal aliens from eligibility for postsecondary education benefits—such as in-state and free tuition—on the basis of residence within a state unless a United States citizen is eligible for the same regardless of residency.

Minnesota, through its Minnesota Dream Act and the North Star Promise Act brazenly flouts Section 1623(a). Minnesota's statutory framework defines eligibility for in-state tuition benefits on the basis of residence.

Subd. 8. **Resident student. "**Resident student" means a student who meets one of the following conditions: … (9) a student eligible for resident tuition under section 135A.043[.]

Minn. Stat. § 136A.101.8 (emphasis preserved).

But section 135A.043, explicitly defines "resident tuition" to include "a student without lawful immigration status," which allows illegal aliens to be eligible for reduced in-state tuition:

**135A.043 RESIDENT TUITION.**
(a) A student, other than a nonimmigrant alien within the meaning of United States Code, title 8, section 1101, subsection(a), paragraph (15), shall qualify for a resident tuition rate or its equivalent at state universities and colleges if the student meets all of the following requirements:
1. high school attendance within the state for three or more years;
2. graduation from a state high school or attainment within the state of the equivalent of high school graduation; and
3. in the case of a student without lawful immigration status:
   (i) documentation that the student has complied with selective service registration requirements; and
   (ii) if a federal process exists for the student to obtain lawful immigration status, the student must present the higher education institution with documentation from federal immigration authorities that the student has filed an application to obtain lawful immigration status.

*Id.* at § 135A.043.

The relevant provisions of the North Star Promise Act, found at Minn. Stat. § 136A.1465, go even further by granting free tuition eligibility to the same illegal aliens who meet the definition of "resident students" under Minn. Stat. § 136A.101 and the requirements set out in Minn. Stat. § 135A.043. Eligible illegal aliens would also have to meet other criteria outlined under Minn. Stat. § 136A.1465, including completing a Free Application for Federal Student Aid or a similar state aid application, having an annual

3

family adjusted gross income below $80,000, and being enrolled in any public postsecondary educational institution. Minn. Stat. §§ 136A.1465, 136A.101.8. United States citizens who are ineligible for "resident tuition" are thus ineligible for reduced in-state tuition and free tuition. *Id.*

While students in neighboring states or Canada may attend high school in Minnesota through "Adjoining States" provisions, *see* Minn. Stat. §§ 124D.04, 124D.041, thereby increasing the odds that they become "resident students," Minnesota does not automatically grant admission to students in the adjoining areas but only upon the condition that the adjoining school district pays the Minnesota district for the cost of the student's attendance. Minn. Stat. § 124D.04 ("a non-Minnesota pupil who resides in an adjoining state in a district that borders Minnesota may enroll in a Minnesota district if either the board of the district in which the pupil resides or state in which the pupil resides pays tuition to the district in which the pupil is enrolled.")

On June 25, 2025, the United States filed a complaint against Minnesota Governor Tim Walz, Minnesota Attorney General Keith Ellison, the State of Minnesota, and the Minnesota Office of Higher Education. ECF No. 1. The Complaint alleges that Section 1623(a) expressly preempts Minn. Stat. §§ 135A.043, 136A.1465. *Id.* at ¶ 50. The challenged Minnesota law provisions unconstitutionally enable Illegal aliens to qualify for postsecondary education benefits on the basis of residence within the state while simultaneously excluding United States citizens who are not residents from those benefits.

The Complaint also seeks declaratory relief invalidating the challenged provisions and a permanent injunction prohibiting Defendants from enforcing them. *Id.* at 15.

On July 23, 2025, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) for failure to state a claim and lack of standing as to the Governor and the Attorney General. Plaintiffs oppose.

### III.    LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court must "accept as true all factual allegations set out in the complaint." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citation omitted) (internal quotation marks omitted). In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). Thus, to withstand a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted).

The party asserting jurisdiction bears the burden of proving jurisdiction is proper. *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010). A court deciding a motion under Rule 12(b)(1) must distinguish between a "factual attack" and a "facial attack." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (citation omitted) (internal quotation marks omitted). If, as in this case, a defendant brings a facial attack under Rule 12(b)(1) by arguing that under the facts alleged in the

complaint the court does not have subject matter jurisdiction, then a court will treat the factual allegations in the complaint as true; in doing so, that court then determines whether those allegations are sufficient to establish subject matter jurisdiction. *Id.* A court must dismiss the action if it determines, at any time, that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## IV.    ARGUMENT

### A.  The Challenged Minnesota Provisions Violate the Supremacy Clause

The United States' Complaint more than adequately alleges a claim of express preemption. State law must give way to federal law when a federal statute contains an express preemption provision. *See Arizona*, 567 U.S. 387, 399 (2012). When the statute includes an express preemption provision, a court must first look to the statutory language to determine Congress's purpose. *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 971 (8th Cir. 2021) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Section 1623(a) prohibits illegal aliens from being eligible for any postsecondary education benefit, such as in-state tuition and free tuition, on the basis of residence within the state unless a United States citizen is eligible for that benefit as well, regardless of residency. The challenged Minnesota provisions allow for illegal aliens to qualify as Minnesota resident students if they fall under Minnesota's definition, while at the same time excluding United States citizens from being classified as resident students if they are not covered by the definition. Minn. Stat. §§ 136A.101, 135A.043, 136A.1465. Individuals

6

that are classified as Minnesota resident students, including illegal aliens, are eligible for in-state tuition and free tuition in Minnesota. Minn. Stat. §§ 135A.043, 136A.1465.

Section 1623(a) clearly and expressly preempts Minn. Stat. §§ 135A.043, 136A.1465. Defendants try to get around this by arguing that the challenged provisions do not make postsecondary education benefits available to illegal aliens on the basis of residence, and that they make some nonresident United States citizens eligible for these benefits. ECF No. 11 at 12-20. The plain language of the challenged state statutes at issue in this case, however, undermines this argument. Under the challenged statutes, most illegal aliens who reside in Minnesota are eligible for in-state tuition whereas most non-Minnesota U.S. citizens are ineligible. Hypothetical margin cases don't change that fact.

1.  Minnesota Law Explicitly Makes Postsecondary Education Benefits Available "On the Basis of Residence."

Minnesota explicitly ties eligibility for in-state tuition and free tuition to a person's classification as a "*resident* student." Minn. Stat. §§ 136A.101 (emphasis added), 135A.043, 136A.1465. Minnesota defines a "resident student" to include a student who (1) attended high school within the state for three years or more and (2) graduated from a state high school or attained the equivalent of graduation from a state high school within the state.[1] Minn. Stat. §§ 136A.101, 135A.043. And Minnesota's definition of "resident student" explicitly allows illegal aliens to qualify as resident students. Minn. Stat. §

---

[1] Minn. Stat. §§ 136A.101, 135A.043 exclude nonimmigrant aliens within the meaning of 8 U.S.C. 1101(a) from the definition of "resident student."

135A.043.[2] It follows that a United States citizen that falls outside the definition of "resident student" will not be classified as such. *Id.* Classification as a "resident student" enables that resident student to qualify for reduced in-state tuition and free tuition. *Id.*; Minn. Stat. § 136A.1465.

The plain language of the challenged Minnesota provisions unquestionably renders illegal aliens eligible—*on the basis of residence within Minnesota*—for postsecondary education benefits while excluding United States citizens who are not classified as residents from eligibility from those benefits in contravention of Section 1623(a). *United States v. Myers*, 56 F.4th 595, 599 (8th Cir. 2022) ("[A]bsent ambiguity, we are bound to give effect to the intent reflected in the statute's plain language and cannot resort to other means of interpretation.") (citation omitted) (internal quotation marks omitted). Contrary to Defendants' contentions (ECF No. 11 at 12-13), the fact that the definition of residence under Minn. Stat. § 135A.043 does not require a person to physically dwell in Minnesota does not change the fact that a person's eligibility for postsecondary education benefits depends on their classification as a "resident student" within Minnesota, as defined by the Minnesota legislature. As such, Minn. Stat. §§ 135A.043, 136A.1465 are expressly preempted by § 1623(a).

---

[2] To qualify, illegal aliens would simply have to present documents demonstrating that they have complied with selective service requirements and documentation showing that they filed an application to obtain lawful immigration status if a federal process exists to do so. Minn. Stat. § 135A.043(a)(3).

Defendants' leading case, *Martinez v. Regents of Univ. of California*, is not persuasive because in addition to being a state court case, the court there erred in its interpretation of the challenged state statute which did exempt illegal aliens "from paying out-of-state tuition" on the basis of residence, *i.e.*, it granted illegal aliens in-state tuition rates on the basis of residence. 241 P.3d 855, 863 (2010). The statute challenged in *Martinez* granted exempted illegal aliens from "nonresident" tuition—exactly what Section 1623(a) prohibits, only put negatively (as an exemption from *nonresident* tuition) rather than positively (as *in-state* tuition). The names don't make a legal difference: either way, illegal aliens are eligible for in-state tuition while non-resident U.S. citizens are not.

Furthermore, despite granting illegal aliens in-state tuition benefits on the basis of residence, the term "residence" was not defined in the challenged state statute in *Martinez*. Rather, a different statute of the California Education code defined the term residence and specifically precluded illegal aliens from establishing residence as defined in California for tuition purposes. *Id.* at 863. *Martinez*—aside from being a non-precedential state case from a different state—is thus distinguishable from the case at bar because the *Martinez* court found that the state statute did not make eligibility for postsecondary education benefits available to illegal aliens on the basis of residence whereas in this case, the state statute plainly does. *Id.* at 863-64. The challenged Minnesota provisions specifically define the term residence and allow for eligibility for reduced in-state and free tuition if a person is covered by its definition of residence, sweeping in illegal aliens who are classified as

resident students and precluding United States citizens who are not classified as resident students. Minn. Stat. §§ 136A.101, 135A.043, 136A.1465.

Moreover, the definition of "resident student" under Minn. Stat. § 135A.043, which includes high school attendance within Minnesota for three or more years and graduation from a Minnesota high school or attainment of the equivalent—is tantamount to a residence requirement. This is bolstered by the fact that Minnesota secondary education law requires a student to be a resident in the school district in order to attend a public secondary education institution for free. *See* Minn. Stat. Ann. § 120A.20 ("Admission to a public school is free to any person who … resides within the district that operates the school."); Minn. Stat. § 120A.22 ("If a district reasonably believes that a student does not meet the residency requirements of the school district in which the student is attending school, the student may be removed [.]"). As such, Minnesota's high school attendance and graduation requirements are simply residency requirements by another name because the fulfillment of those requirements (without having to pay a fee) will most often be fulfilled by a person that lives in Minnesota.[3] Limited exceptions from cross-border students and out-of-state

---

[3] While nonresidents may also attend a private high school in Minnesota and may pay to attend public high school (in the absence of a reciprocity agreement, which is currently limited to South Dakota and Iowa), the percentage of individuals who fall within this group is likely to be too low to impact the preemption analysis. *See* Minn. Stat. § 124D.04 ("[A] non-Minnesota pupil who resides in an adjoining state in a district that borders Minnesota may enroll in a Minnesota district if either the board of the district in which the pupil resides or state in which the pupil resides pays tuition to the district in which the pupil is enrolled."); Minn. Stat. § 124D.041 (outlining reciprocity with adjoining states); *see also* Minnesota Department of Education, Open Enrollment, https://education.mn.gov/mde/fam/open/ (last visited Aug. 8, 2025) ("Minnesota has

boarding school students only bolster the point: even if the challenged statute did not define residency to include illegal aliens—it does—the definition's elements principally cover Minnesota residents. As such, the definition under Minn. Stat. § 135A.043 amounts to a residence requirement.

But Defendants' grasping attempts to find "resident students" that do not make their domicile in Minnesota  is really beside the point. Even if not one single student covered by Minnesota's definition of "resident student" lived in Minnesota—say, if Minnesota defined "resident student" as any student domiciled exclusively in New Jersey—the challenged statutes are still preempted because they make illegal aliens "eligible" for in state tuition "on the basis of residence within a State." 8 U.S.C. § 1623(a).

2. <u>Minnesota Law Does Not Make United States Citizens Eligible for Postsecondary Education Benefits Without Regard to Their Residence in Minnesota.</u>

As explained supra § IV.A.1, individuals who fall outside the definition under Minn. Stat. § 135A.043 will not be classified as students eligible for in-state tuition and free tuition. Minn. Stat. §§ 136A.101, 135A.043, 136A.1465. Of these individuals, the overwhelming majority of U.S. citizens will not meet Minnesota's "resident student" definition and will not be eligible for the attendant postsecondary education benefits. But

---

border agreements to assist in enrollment of South Dakota and Iowa into Minnesota public schools and vice versa.").

illegal aliens "shall not be eligible *on the basis of* residence within a State," where U.S. citizens are not. 8 U.S.C. 1623(a).

The statutory language *on the basis of* creates a "sweeping standard" that incorporates a "but-for causation" test. *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 656 (2020). In *Bostock*, the Supreme Court held that Congress' choice to prohibit discrimination "because of" sex meant that "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* There, if sex was "one but-for cause" of a decision to terminate an employee, the law prohibiting such conduct was triggered. *Id.* Here, the "on the basis of" language in Section 1623(a) closely tracks the "because of" language in Title VII of the Civil Rights Act—indeed the Supreme Court seems to use the terms interchangeably. *Id.* at 664 ("An employer's intentional discrimination *on the basis* of sex is no more permissible when it is prompted by some further intention.") (emphasis added). Therefore, Defendant's attempts to avoid the preemptive effect of Section 1623(a) by pointing to additional but-for causes that could prevent an illegal alien from receiving in-state tuition benefits in Minnesota are unavailing. ECF No. 11 at 19. But for an illegal alien's residence status within Minnesota, they would not receive in-state tuition. Minn. Stat. § 135A.043.

There is no way under the challenged Minnesota provisions that "*a* citizen or national of the United States" would be eligible for in-state tuition and free tuition "*without regard* to whether the citizen … is … a resident" if that person is not classified as a resident student. 8 U.S.C. § 1623(a) (emphasis added). Defendants argue that "all" and "a" have

different meanings. However, it is a well-established rule of law that the use of the word "a" is an "indefinite or generalizing force." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003). And "without regard to" means "without attention paid to," in this case, the residence of U.S. citizens in determining their eligibility for in-state tuition when illegal aliens receive in-state tuition on the basis of residence. Merriam-Webster.com Dictionary, s.v. "without regard to," (last visited August 13, 2025), https://www.merriam-webster.com/dictionary/without%20regard%20to. So the best reading of the statute is that if illegal aliens are eligible for in-state tuition on the basis of residency, then *all* U.S., citizens must be eligible for the same, otherwise Minnesota is allocating eligibility by *paying attention to* the residence of U.S. citizens. Forcing "a" U.S. citizen (any U.S. citizen) to meet Minnesota's definition of "resident student" in order to be eligible for in-state tuition is precisely what is prohibited by Section 1623(a).

Notably, several Minnesota public colleges and universities may choose to offer in-state tuition to all students regardless of their immigration status or state of residence. *See* Minnesota Office of Higher Education, Minnesota Dream Act, https://www.ohe.state.mn.us/mPg.cfm?pageID=1586 (last visited Aug. 8, 2025). Minnesota also has reciprocity agreements with neighboring states that allow individuals from that state to benefit from lower tuition rates. *See* Minnesota Office of Higher Education, Tuition Reciprocity, https://ohe.mn.gov/paying-college/other-ways-pay/tuition-reciprocity (last visited Aug. 8, 2025). However, the existence of these allowances and agreements does not undercut the fact that the challenged Minnesota laws

are unconstitutional because they impermissibly allow illegal aliens to be eligible for postsecondary education benefits while excluding United States citizens from eligibility for the same on the basis of residence in a state. 8 U.S.C. § 1623(a). *See Arizona*, 567 U.S. at 399 ("The Supremacy Clause gives Congress the power to preempt state law.").

Defendants' argument that the challenged statutes do not run afoul of Section 1623(a) because "nonresident U.S. citizens … qualify for in-state tuition by attending and graduating from a Minnesota high school" (ECF No. 11 at 19) is a red herring. The fact that a small number of U.S. citizens could conceivably qualify for Minnesota resident tuition if they met Minnesota's definition of "resident student" is precisely the problem. The challenged statutes require any U.S. citizen to meet Minnesota's definition of "resident student" in order to receive in-state tuition. Minn. Stat. § 136A.101.8. Plainly, Minnesota does "regard … whether the citizen … is such a resident." 8 U.S.C. § 1623(a). "'[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows,' and the prohibition...is 'levelled at the thing, not the name.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023). Minnesota cannot work around the Supremacy Clause through creative wordsmithing, suggesting that "resident" doesn't really mean resident but something else.

Furthermore, it stretches reason to accept Plaintiffs' reading of the challenged statutes where, in their view, all manner of illegal aliens residing *outside* Minnesota are eligible for in-state tuition in Minnesota. For example, it would be highly unusual for an adjoining district—say, Iowa—to pay the tuition of an illegal alien residing in Iowa to

attend a Minnesota high school. Minn. Stat. § 124D.04.  This may be conceivable but only as mere conception, not reality. The court should focus on the "substance, not  shadows." *Id.* This Court should not allow Minnesota to do indirectly what it cannot do directly and hold that the challenged statutes are preempted.

### B.  Section 1623(a) Was Enacted Pursuant to Constitutional Authority and is Best Read as Regulating Private Actors

Section 1623(a) plainly regulates the benefits an illegal alien can receive, and state conduct is only incidental to that regulation. In enacting Section 1623(a), the Federal Government sought to, as its title suggests, limit preferential treatment of illegal aliens on the basis of residence for higher education benefits. Section 1623 regulates private individuals, namely aliens, and the statute prevents anyone—private actors and states alike—from interfering with the Federal Government's ability to do so. As such, Section 1623(a) is a valid preemption provision, and Defendants' contentions otherwise (ECF No. 11 at 8-9) rely on a strained and implausible reading of the statute.

As articulated in *Murphy v. Nat'l Collegiate Athletic Ass'n*, in order for a federal provision to preempt state law, it must (1) "represent the exercise of a power conferred on Congress by the Constitution; pointing to the Supremacy Clause will not do"; and (2) "be best read as one that regulates private actors." 584 U.S. 453, 477 (2018).

Section 1623(a) meets the requirements articulated in *Murphy*. The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4. Congress exercises this authority through the Immigration and Nationality Act (INA) and related laws, *see* 8 U.S.C. § 1101 *et seq.*, which together make up the framework

15

for the "governance of immigration and alien status[.]" *Arizona*, 567 U.S. at 395; *id.* at 416 ("The National Government has significant power to regulate immigration."). There can thus be no doubt that Section 1623(a) "represent[s] the exercise of a power conferred on Congress by the Constitution." *Murphy*, 584 U.S. at 477.

Defendants' challenge this bedrock principle by counterposing the state's police power to regulate education. ECF No. 11 at 11. But this (unsuccessful) attempt to avoid preemption by questioning Congress' immigration authority only leads to preemption under different Congressional authority: the Interstate Commerce Clause. U.S. Const., art. I § 8, cl. 3. And, as Plaintiffs are at pains to point out (*see, e.g.*, ECF No. 11 at 19), the challenged statutes do pertain to interstate commerce by regulating the interstate market for college education. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) ("Our precedents read [the Commerce Clause] to mean that Congress may regulate the channels of interstate commerce, persons or things in interstate commerce, and those activities that substantially affect interstate commerce.").

Exercising this power conferred by the Constitution, Congress implemented the IIRIRA. Section 1623(a) does not issue an order to the States to do anything or refrain from doing anything but regulates private actors, namely, aliens:

> Notwithstanding any other provision of law, ***an alien*** who is not lawfully present in the United States ***shall not be eligible on the basis of residence within a State*** (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

16

8 U.S.C. § 1623(a) (emphasis added). In ascertaining a statute's plain meaning, we "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). The plain language of Section 1623(a) reveals that it regulates private individuals, specifically illegal aliens. The statute's regulation of these specific private individuals is within the purview of the Federal Government based on the power afforded to it in the Constitution. That Section 1623(a) deters other private actors (such as postsecondary education institutions) and states alike from interfering with the Federal Government's ability to regulate aliens, only proves that Section 1623(a) regulates private individuals. *See Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (recognizing that Section 1623(a) impacts a state's ability to enact legislation that grants in-state tuition benefits to illegal aliens when U.S. citizens do not receive the same); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (recognizing that Section 1623(a) impacts a postsecondary educational institution's ability to grant in-state tuition benefits to illegal aliens); *see also Murphy*, 584 U.S. at 475 (discussing case where statute simply had the "indirect effect" of pressuring states to take a certain action but did not order the states to enact or maintain an existing law). "It is elementary that, where no ambiguity exists, there is no room for construction." *United States v. Missouri Pac. R. Co*., 278 U.S. 269, 277 (1929). No amount of squinting at a statute that applies to "aliens" will make it regulate states. 8 U.S.C. 1623(a). The Court, therefore, need not consider Defendants' attempts to obscure the plain meaning of Section 1623(a).

In any event, the cases that Defendants cite in support of their position that Section 1623(a) is not preemptive are inapposite. ECF No. 11 at 8-9. The Supreme Court in *Murphy* held that a federal statute that "unequivocally dictates what a state legislature may and may not do" was not a preemptive statute and unconstitutionally violated the Tenth Amendment's anticommandeering doctrine. 584 U.S. at 472-480. If the federal statute in *Murphy*, which caused "state legislatures [to be] put under the direct control of Congress," controls this case, then there is no limit to the anti-commandeering doctrine. *Id.* at 474. Section 1623(a) is a far cry from installing "federal officers … in state legislative chambers."

Similarly, in *Ocean Cnty. Bd. of Comm'rs v. Attorney Gen. of N.J.*, the Third Circuit Court of Appeals held that two federal statutes, which prohibited and restricted the States from taking certain actions, were not preemptive provisions because neither regulated private actors. 8 F.4th 176, 181 (3d Cir. 2021). The District Court of Colorado came to the same conclusion about the same statutory provisions in *Colorado v. United States Dep't of Just.*, 455 F. Supp. 3d 1034, 1058 (D. Colo. 2020). But neither statute challenged in those cases is analogous to Section 1623(a) because, unlike Section 1623(a), they do not name a private actor. *Id.* Since Section 1623(a) explicitly names the private actor regulated by the statute, it goes beyond what's required to have preemptive effect. *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 490 (D.N.J. 2023), aff'd sub nom. *CoreCivic, Inc. v. Governor of New Jersey*, 2025 WL 2046488 (3d Cir. July 22, 2025) ("[T]he Court does

not read these cases to require that federal law must explicitly name a private actor in order to have preemptive effect").

The plain language of Section 1623(a) does not order state legislatures to do anything, and when read alone or in context with the entire IIRIRA, it plainly regulates private individuals, namely, illegal aliens. If this Court were to read Section 1623(a) otherwise, as somehow not preempting the challenged statutes, it would raise the question, "What statutes could have preemptive effect?" If a statute that clearly identifies private actors and incidentally affects states is not preemptive, then what is? The Federal Government undoubtedly has the authority to regulate illegal aliens. U.S. Const., art. I § 8, cl. 4. For the same reasons that Section 1623(a) is a preemptive provision, it does not violate the Tenth Amendment anti-commandeering doctrine. ECF No. 11 at 22-23.

Even if this Court were to read Section 1623(a) as compelling the states to take or not take certain action, under *Murphy*, this would not violate the Tenth Amendment because Section 1623(a) also impacts a postsecondary educational institution's decision regarding who to grant in-state tuition to. *Murphy*, 584 U.S. at 475–76 ("The anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage.").

### C. The United States Has Standing to Defend its Interests

The United States has standing to bring this suit against Governor Tim Walz and Attorney General Keith Ellison. The doctrine of Article III standing stems from the Constitution's case-or-controversy limitation on judicial power. *Davis v. Fed. Election*

*Comm'n*, 554 U.S. 724, 734 (2008). "Article III requires 'a causal connection' between the injury and the defendant's conduct[.]" *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (observing that to have standing, a plaintiff must demonstrate a concrete injury in fact that is fairly traceable to the conduct of the party sued and judicially redressable). In a case where a plaintiff sues a state official to enjoin the enforcement of a state statute, the plaintiff must show that the state official plays "some role in enforcing" the challenged statute. *Doe v. Holcomb*, 883 F.3d 971, 975–96 (7th Cir. 2018) (referencing *Ex parte Young*, 209 U.S. 123, 157 (1908) (holding that an officer of the state must have "some connection with the [challenged] act").

But Defendants' role in enforcing the challenged statutes need not be "declared in the same act which is to be [challenged]." *Ex parte Young*, 209 U.S. at 157. Rather, "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact" for determining plaintiff's standing to sue. *Id.* If a duty to enforce a statute is not written on its face but "otherwise exist[s] it is equally efficacious." *Id.*

> It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional.

*Id.* at 161. Just so here for the Governor and Attorney General who also have a general duty to enforce the laws of Minnesota.

20

As a preliminary matter, the United States has suffered a concrete injury traceable to Minn. Stat. §§ 135A.043, 136A.1465 because each statute interferes with the Federal Government's legally protected interest in enforcing Section 1623(a). *See United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024) ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States."); *see also Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) ("[T]he United States may sue to protect its interests."). The Federal Government's injury is judicially redressable because invalidating Minnesota's preempted statutes and enjoining their enforcement would prevent such interference. Defendants Walz and Ellison nonetheless seek their dismissal from the Complaint for lack of standing. *See* ECF No. 11 at 24-26. The Court should reject their attempts to dismiss the claims against them for lack of Article III standing.

Defendants Walz and Ellison argue that they play no role with respect to the challenged statutes. *See* ECF No. 11 at 24-25. Defendants, however, are wrong. The Attorney General is a proper party if state law bestows on that office a right to enforce a state law. *See Shell Oil Co. v. Noel*, 608 F.2d 208, 212 (1st Cir. 1979). Here, the Attorney General has the power to enforce the laws of Minnesota. *See* Minn. Stat. § 8.01. As for the Governor, the Minnesota Constitution grants the Governor the power to "take care the laws be faithfully executed." Minn. Const. art. V, § 3. Thus, the enforcement powers of the Attorney General and the Governor naturally extend to the power to enforce Minn. Stat. §§ 135A.043, 136A.1465. *Doe*, 883 F.3d at 975–96.

21

Defendants rely on *Digital Recognition Network, Inc. v. Hutchinson* to support their argument that the enforcement powers of the Attorney General and the Governor are insufficient. ECF No. 11 at 26. Plaintiffs' reliance is misplaced. Unlike the case at bar in which the Governor and Attorney General undoubtedly do possess enforcement authority, the law at issue in *Digital Recognition Network* provided for enforcement only by private civil litigants in actions for damages. 803 F.3d at 958. The Plaintiffs cannot reasonably analogize the Governor and State Attorney General, in their official capacity, to private litigants.

Not only is the Governor connected with the enforcement of the act, but he has the authority to control its enforcement through his appointments. The Governor, with the advice and consent of the senate, appoints the Commissioner for the Minnesota Office of Higher Education ("OHE") who continues to "serv[e] at the pleasure of the Governor." Minn. Stat. § 136A.03. The Commissioner has administrative control over the OHE. Minn. Stat. § 136A.03. The OHE, in turn, has direct enforcement authority over Minn. Stat. §§ 135A.043, 136A.1465. The OHE is charged with making financial aid programs and in-state tuition accessible to qualifying students. The OHE also assists students with access to postsecondary education, among other things. *See* Minn. Stat. § 136A.01; Minnesota Office of Higher Education, About Us, https://www.ohe.state.mn.us/mPg.cfm?pageID=894 (last visited Aug. 8, 2025); *see also* Minnesota Office of Higher Education, Minnesota Dream Act, https://www.ohe.state.mn.us/mPg.cfm?pageID=2056 (last visited Aug. 8, 2025).

Furthermore, Governor Walz's own public statements and actions reflect that he has directed his administration—which includes the Minnesota Attorney General—to implement the North Star Promise Scholarship Program and the Minnesota Dream Act in line with his policy prescriptions.  Indeed, in May of 2023 the Governor signed the North Star Promise into law. *See Governor Walz, Lieutenant Governor Flanagan Recognize Career and Technical Education Month,* Officer of Governor Tim Walz & Lt. Governor Peggy Flanagan (Feb. 20, 2024), https://mn.gov/governor/newsroom/press-releases/?id=1055-610199#/detail/appId/1/id/610199. The governor touts the law as one of his "Signature Accomplishments" because it "provided free college for students with a family income under $80,000" including illegal aliens. *Governor Walz's Signature Accomplishments*, Office of Governor Tim Walz & Lt. Governor Peggy Flanagan, https://mn.gov/governor/accomplishments/accomplishments.jsp (last visited Aug. 8, 2025). Even in their motion to dismiss, Defendants—including the Governor—reassert their "commitment to providing affordable post-secondary education to all students with *bona fide* connections to Minnesota [*i.e.*, residence] regardless of immigration status [*i.e.*, illegal aliens]." ECF No. 11 at 1-2. Not only has the Governor taken affirmative steps to pass and enforce laws that are preempted by federal law, but he has also openly supported policies that "keep law enforcement from enforcing federal law." X.com @Tim_Walz, https://x.com/tim_walz/status/999346196769583104?s=46 (last visited Aug., 8, 2024). The Governor's efforts to thwart the enforcement of federal immigration law have landed Minnesota on the Department of Justice's Sanctuary Jurisdictions List. *Justice Department*

*Publishes List of Sanctuary Jurisdictions, U.S. Department of Justice Office of Public Affairs,* https://www.justice.gov/opa/pr/justice-department-publishes-list-sanctuary-jurisdictions (last visited Aug. 8, 2025). The argument that the Governor and the Attorney General "play no role with respect to the challenged statutes" is not credible—the Governor's administration has been consistently committed to his platform of thwarting federal law enforcement and offering assistance to illegal aliens so that they can remain in Minnesota. ECF No. 11 at 24. Accordingly, Governor Walz and Attorney General Ellison are proper defendants to the United States' claims. For these reasons, the United States has Article III standing against them, and they should not be dismissed.

Even if the Attorney General and the Governor were dismissed from this action, Defendants do not dispute that the State of Minnesota is a proper defendant, and an injunction against the State of Minnesota would fully redress the United States' injuries as to its claims against the challenged Minnesota provisions. Thus, this Court could simply enjoin the State of Minnesota, its agents, officers, and employees, and all other persons and entities from taking any measures to enforce the challenged provisions, rendering moot Defendants' contentions about Article III standing. *See, e.g., Pennsylvania v. West Virginia*, 262 U.S. 623, 624 (1923) (per curiam) (ordering "[t]hat the defendant state, and her several officers, agents and servants, are hereby severally enjoined from enforcing, or attempting to enforce" an unconstitutional law); *United States v. Texas*, 340 U.S. 900 (1950) (Mem.) (enjoining "the State of Texas, its privies, assigns, lessees, and other

persons claiming under it," from engaging in certain activities); *United States v. Louisiana*, 340 U.S. 899 (1950) (Mem.) (similar).

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

DATED: August 13, 2025                    Respectfully submitted,

BRETT A. SHUMATE                          ELIANIS N. PEREZ
Assistant Attorney General                Assistant Director
                                          Office of Immigration Litigation
YAAKOV M. ROTH                            General Litigation and Appeals Section
Principal Deputy Assistant Attorney
General                                   LUZ MARIA RESTREPO
                                          Trial Attorney
DREW C. ENSIGN                            Office of Immigration Litigation
Deputy Assistant Attorney General         General Litigation and Appeals Section

                                          By: /s/ *Sean Skedzielewski*
                                          SEAN SKEDZIELEWSKI
                                          (N.Y. Bar No. 2112429)
                                          Counsel to Assistant Attorney General
                                          United States Department of Justice
                                          Civil Division
                                          950 Pennsylvania Ave NW
                                          Washington D.C. 20530
                                          Telephone: 202-307-1697
                                          Email: Sean.Skedzielewski@usdoj.gov

                                          *Attorneys for the United States*