UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil File No. 25-cv-02668-KMM-DTS |
| Plaintiff, | |
| vs. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO FEDERATION FOR AMERICAN IMMIGRATION REFORM'S** *AMICUS* **BRIEF** |
| Tim Walz, the Governor of Minnesota in his official capacity; State of Minnesota; Keith Ellison, Attorney General for the State of Minnesota in his official capacity; Minnesota Office of Higher Education, | |
| Defendants. | |

## INTRODUCTION

Section 1623 is a federal law that purports to regulate benefits provided to undocumented immigrants on the basis of residence within a state. *Amicus curiae* Federation for American Immigration Reform (FAIR) opposes Defendants' motion to dismiss by improperly attempting to use legislative history to rewrite Section 1623. FAIR admits that non-Minnesota residents qualify for benefits under the Minnesota Dream Act but asks this Court to disregard that fact to fulfill what FAIR sees as the "purpose" behind Section 1623. But courts may not rewrite statutes as FAIR urges, and FAIR has not contested several of Defendants' arguments for dismissal. As Defendants have previously argued, this Court should dismiss the complaint with prejudice.

# BACKGROUND

The facts of this case are by now familiar to this Court. The relevant federal statute ("Section 1623") states:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

The Minnesota Dream Act provides resident tuition at certain public colleges and universities for qualifying students. *See* Minn. Stat. § 135A.043. None of its criteria require a student to reside in Minnesota. Instead, it looks to whether a student attended and graduated from a Minnesota high school, with some additional requirements for undocumented students. *Id.* A student meeting these criteria is also eligible for Minnesota's North Star Promise program if he or she meets additional requirements. *See* Minn. Stat. § 136A.1465, subd. 1–2.

The United States, FAIR, and Defendants all agree that non-Minnesota residents qualify for the Minnesota Dream Act. (*See* ECF 11 at 13; ECF 15 at 4, 7–8, 10–11 & n.3, 14; ECF 22 at 8–9.) There are at least three ways they may do so: (1) out-of-state students may attend Minnesota public or private high schools, (2) out-of-state students may attend Minnesota boarding schools, and (3) former Minnesota residents who attended and graduated from Minnesota high schools may qualify despite having moved from Minnesota.

In June 2025, the United States brought this suit contending that Section 1623 expressly preempts the Minnesota Dream Act and North Star Promise to the extent they provide benefits to undocumented immigrants. In July 2025, Defendants moved to dismiss the complaint for failure to state a claim and for lack of standing with respect to certain Defendants. (ECF 10–13.) On August 22, 2025, with the Court's permission, FAIR filed an *amicus* brief opposing Defendants' motion. (ECF 22.) As permitted by the Court, Defendants submit this memorandum in response. (*See* ECF 21.)

## ARGUMENT

### I. FAIR DOES NOT CONTEST THAT SECTION 1623 LACKS PREEMPTIVE EFFECT BECAUSE IT DOES NOT REGULATE PRIVATE ACTORS.

A federal statute may only preempt state law if it is "best read" as "regulat[ing] private actors." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Defendants' moving memorandum argued at length that Section 1623 lacks preemptive effect because it does not regulate private actors: it confers no rights and imposes no restrictions on individuals. (ECF 11 at 8–9.) FAIR has not contested this. *Murphy* would require dismissal even if FAIR's arguments were correct.

### II. LEGISLATIVE HISTORY CANNOT ERASE SECTION 1623'S PLAIN LANGUAGE.

Section 1623 only regulates benefits provided to undocumented immigrants "on the basis of residence within a State (or a political subdivision)." 8 U.S.C. § 1623(a). In Section I of its brief, FAIR ignores this plain language and argues Section 1623 applies to "*any* in-state tuition benefit a State extends to unlawfully present aliens[.]" (ECF 22 at 4 (emphasis added).)

3

FAIR argues "legislative intent is the 'ultimate touchstone in every pre-emption case.'" (ECF 22 at 4 (quoting *Wyeth v. Levine,* 555 U.S. 555, 565 (2009) and *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).) FAIR ignores, however, that "Congress' intent . . . primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Medtronic*, 518 U.S. at 486; *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) ("the statutory language . . . necessarily contains the best evidence of Congress' pre-emptive intent" (internal quotation omitted)).

Tellingly, FAIR offers no analysis of Section 1623's language. Instead, FAIR proceeds immediately to a cherrypicked legislative history to conclude that "Congress sought to make it practically impossible for states to grant instate tuition to illegal aliens." (ECF 22 at 5.) "Starting with legislative history and purpose, however, is no way to read a statute." *United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 836 (8th Cir. 2022). Courts do not "resort to legislative history to cloud a statutory text that is clear." *Cont'l Res., Inc. v. N.D. Bd. of Univ. & School Lands*, 136 F.4th 778, 785 (8th Cir. 2025) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)). And legislative history can never be used, as FAIR urges, to contravene a statute's plain language. *See, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); *Stursberg v. Morrison Sund PLLC*, 112 F.4th 556, 564 (8th Cir. 2024) ("We seldom rely on legislative history and never when it is contrary to the plain meaning of the statute."); *In re Goetz*, 95 F.4th 584, 591 (8th Cir. 2024) ("No amount of legislative history can defeat

the plain text of the Code."); *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 810 (8th Cir. 2021) ("It goes without saying that legislative history cannot overcome the statutory text.").

The California Supreme Court rejected the same arguments FAIR urges here. *See Martinez v. Regents of the Univ. of Calif.*, 241 P.3d 855, 865–66 (Cal. 2010). FAIR quotes a sentence of a House conference committee report that states: "This Section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." (ECF 22 at 5.) The *Martinez* court stated "[t]he report's general summary oversimplifies more nuanced statutory language" and "cannot change the circumstance that the actual statutory prohibition is not absolute, but qualified," concluding that "Section 1623's actual language prevails, not the committee report's." *Martinez*, 241 P.3d at 865. And regarding statements of Congress members, the court noted "the views of individual legislators carry little weight in interpreting the intent of the legislative body as a whole." *Id.* (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002) ("Floor statements from two Senators cannot amend the clear and unambiguous language of a statute. We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text.")).

FAIR contends a statutory interpretation should be rejected "where the legislative record supported a contrary understanding[.]" (ECF 22 at 6 (citing *United States v. Hayes*, 555 U.S. 415, 429 (2009)).) But in the case FAIR cites, the Supreme Court first engaged in a lengthy textual analysis to determine how the statute was "[m]ost sensibly read."

5

*Hayes*, 555 U.S. at 420–26. The Court only then noted its reading was supported by legislative history; it did not use legislative history to contradict statutory language as FAIR urges. In fact, the Court cautioned that "[t]he remarks of a single Senator are 'not controlling[.]'" *Id.* at 429 (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980)).

"If Congress had intended to prohibit states entirely from making unlawful aliens eligible for in-state tuition, it could easily have done so." *Martinez*, 241 P.3d at 864. But Congress chose to only limit benefits provided "on the basis of residence." *See id.* The Court should reject FAIR's attempt to erase this language from Section 1623 by resorting to legislative history.

### III.   SECTION 1623 DOES NOT PREEMPT THE MINNESOTA DREAM ACT.

#### A.   The Minnesota Dream Act Does Not Provide Benefits "On The Basis Of Residence."

In Section II of its brief, FAIR acknowledges that Section 1623 only applies to laws providing benefits "on the basis of residence" and agrees that non-Minnesota residents qualify for the Minnesota Dream Act. (ECF 22 at 8–11.) Yet it still argues that Section 1623 preempts the Minnesota Dream Act because, according to FAIR, "[t]he vast majority" of qualifying students "are bona fide Minnesota residents[.]" (*Id.* at 9.) FAIR urges that any qualifying nonresidents should be disregarded as "marginal examples" that "are not representative[.]" (*Id.* at 8.)

6

FAIR offers no textual support for its reading.[1]  Section 1623 is clear: its reach is limited to laws providing benefits on the basis of residence.  The Minnesota Dream Act "cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify." *Martinez*, 241 P.3d at 864

FAIR would read Section 1623 to apply to state laws providing benefits on *any* basis if there is too much "overlap" between beneficiaries and residents.  (ECF 22 at 9.)  Instead of looking to Section 1623's text, FAIR relies on its view of congressional "purpose" or "objectives."  (*See* ECF 22 at 4–7, 9–10.)  As discussed above, FAIR's attempt to divine congressional purpose from legislative history rather than statutory text is improper. *See, e.g., Dan's City Used Cars*, 569 U.S. at 260 ("[T]he statutory language . . . necessarily contains the best evidence of Congress' pre-emptive intent." (internal quotation omitted)); *Designworks Homes, Inc.*, 9 F.4th at 810 ("[L]egislative history cannot overcome the statutory text.").  And courts cannot revise statutory language based on their view of congressional "purpose" or "objectives."  *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) ("This Court has no roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader."); *Univ. of*

---

[1] FAIR makes perfunctory claims that the Minnesota Dream Act "violate[s] the purpose and text of Section 1623(a)," and is "at odds with both the objectives and text of Section 1623," (ECF 22 at 7, 9), but never offers any reading of Section 1623's text to support its argument. FAIR also claims without any analysis that Section 1623(a) "confers on every U.S. citizen a federal right to receive any in-state-tuition benefit a State extends to unlawfully present aliens." (ECF 22 at 4.)  But the Fifth Circuit rejected this reading in *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304 (5th Cir. 2023) and reversed the district court's ruling on this basis. *Id.* at 312–15 (rejecting the district court's "rewrite" of the Section 1623(a) that "*require[d]* states to grant benefits to citizens if they grant those benefits to illegal aliens").

7

*Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("[I]t would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope.").

FAIR also contends this Court should disregard that nonresidents qualify for the Minnesota Dream Act because "[c]ourts look to a law's practical, normal application, rather than marginal applications, to discern its effects." (ECF 22 at 9.) But this statement is nonresponsive to the issue: Section 1623's preemptive reach depends upon whether state laws make undocumented students eligible for benefits "on the basis of residence." And nonresidents *are* made eligible by the Minnesota Dream Act's "practical, normal application," as its criteria apply universally regardless of citizenship or residence.[2]

Like the United States, FAIR provides no discernible standard for determining preemption under Section 1623. FAIR, like the United States, suggests Section 1623 preempts laws providing benefits to a group that "overlap[s]" too greatly with state residents. (ECF 22 at 9.) But how should "overlap" be measured and what is the cutoff between an acceptable law and a preempted one? Neither FAIR nor the United States can answer these questions because there is no basis for this interpretation in the text. *Cf.*

---

[2] Neither of the two cases FAIR cites support its argument that the Court should disregard that nonresidents qualify for the Minnesota Dream Act. Both cases involved issues where the constitutionality of laws turned on their effects or purposes. *See Henderson v. Mayor of City of New York*, 92 U.S. 259, 268–71 (1875) (state law impermissibly encroached on Congress's right to regulate foreign commerce); *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011) (state law's "stated purpose" is relevant to determining whether it violates First Amendment). Here, preemption turns on whether Minnesota's laws provide benefits on the basis of residence, not on their "purpose" or "effects." The tests applied under the Commerce Clause and First Amendment in *Henderson* and *Sorrell* do not apply here.

8

*United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (statute is unconstitutionally vague if it does not provide "a discernable standard").

Once again, the California Supreme Court rejected the same arguments. Congress "could easily" have "prohibit[ed] states entirely from making unlawful aliens eligible for in-state tuition" but "did not do so." *Martinez*, 241 P.3d at 864. Instead, it only limited benefits provided "*on the basis of residence within a State*." *Id.* (quoting 8 U.S.C. § 1623(a).) As in *Martinez*, those who satisfy the Minnesota Dream Act's criteria will often be Minnesota residents, but the "criteria are not the same as residence, nor are they a de facto or surrogate residency requirement" as shown by the fact that nonresidents may qualify. *Id.* "Congress specifically referred to *residence*—not some form of surrogate for residence—as the prohibited basis for granting unlawful aliens a postsecondary education benefit." *Id.*

FAIR fails to even acknowledge *Martinez* even though it upheld a statute nearly identical to the Minnesota Dream Act, rejected the same arguments that FAIR makes here, and is heavily cited in Defendants' moving memorandum. Neither FAIR nor the United States has offered any reason this Court should reach a different result.

**B.    Fair's Discussion Of Materials Outside The Complaint Cannot Be Considered On This Motion.**

FAIR also argues that out-of-state students wishing to attend Minnesota public high schools must navigate some red tape to do so. (ECF 22 at 8–9.) These arguments should not be considered because they are not supported by the complaint and rely on materials

9

outside the complaint.³ *See Spencer v. U.S. Bureau of Prisons*, 2021 WL 3426049, at *2 (D. Minn. June 1, 2021) (Menendez, J.) ("courts do not consider materials 'outside the pleadings'" on a motion to dismiss).

Regardless, FAIR concedes out-of-state students may attend Minnesota public schools and qualify for the Minnesota Dream Act. It is irrelevant that not all out-of-state students may be able to do so or that those who do face some administrative hurdles. And these arguments do not apply to out-of-state students who attend Minnesota private schools or boarding schools or to former residents who move from Minnesota after high school, all of whom are nonresidents who may qualify for the Minnesota Dream Act.

### C.    FAIR's Discussion Of *Plyler v. Doe* Is Irrelevant To This Motion.

In the opening to their moving memorandum, Defendants invoked *Plyler v. Doe*, 457 U.S. 202 (1982), to explain the policy rationale underlying Minnesota's decision to extend educational opportunities regardless of immigration status. There, the Supreme Court warned that denying education to undocumented immigrants "raises the specter of a permanent caste of undocumented resident aliens, encouraged by some to remain here as a cheap source of labor, but nevertheless denied the benefits that our society makes available to citizens and lawful residents." *Plyler*, 457 U.S. at 218.

---

³ FAIR's many factual assertions about who qualifies for the Minnesota Dream Act, like the United States's similar assertions, are also unsupported by the complaint and should be disregarded. (*See, e.g.,* ECF 22 at 9 ("In practice, attendance and residence overlap almost completely, so Minnesota's proxy-based test is functionally indistinguishable from a residency-based conferral of benefits to illegal aliens.").)

FAIR responds that "*Plyler* does not justify Minnesota's postsecondary tuition scheme" and contends it dealt only with "preventing undocumented children from becoming illiterate and from becoming public charges." (ECF 22 at 10.) Defendants disagree and assert that *Plyler*'s rationales apply equally to postsecondary educations.[4] But these disagreements regarding the dignity that undocumented youth are entitled to are irrelevant to the pending motion.

## IV. FAIR DOES NOT CONTEST THAT U.S. CITIZENS ARE ELIGIBLE FOR THE MINNESOTA DREAM ACT WITHOUT REGARD TO RESIDENCE IN MINNESOTA.

Even where a state does provide benefits on the basis of residence, Section 1623 is inapplicable if "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). U.S. citizens outside Minnesota qualify for the Minnesota Dream Act and North Star Promise just as noncitizens do. (ECF 11 at 17–20.) Citizens outside Minnesota can also qualify for resident tuition in other ways, such as by living in a state that has a tuition reciprocity agreement with Minnesota. (Compl. ¶ 31.) Section 1623 would therefore not preempt the laws at issue here even if Section 1623 had preemptive effect and even if Minnesota provided benefits on the basis of residence. (*See* ECF 11 at 17–20; ECF 23

---

[4] *See, e.g., Ruiz v. Robinson*, 892 F. Supp. 2d 1321, 1328–29 (S.D. Fla. 2012) ("Though *Plyler* addressed a state's denial of *primary* education to individuals based on immigration status, the importance of post-secondary education cannot be overlooked. In the thirty years that have elapsed since the Supreme Court decided *Plyler*, the needs of the labor force have changed dramatically and the importance of post-secondary education has increased significantly.)

11

at 11–13.)  FAIR has not disputed this.  Once again, dismissal would be required even if FAIR's arguments were correct.

## V. FAIR DOES NOT CONTEST THAT THE UNITED STATES LACKS STANDING WITH RESPECT TO GOVERNOR WALZ AND ATTORNEY GENERAL ELLISON.

Governor Tim Walz and Attorney General Ellison argued that the United States lack standing against them because they do not enforce the state laws at issue here.  (ECF 11 at 23–26.)  FAIR has not disputed these arguments.

## CONCLUSION

FAIR, like the United States, concedes that nonresidents qualify for the Minnesota Dream Act.  But by appealing to congressional "purpose" and legislative history, FAIR, asks this Court to broaden Section 1623 to prohibit states from providing benefits where many—but not all—recipients are residents.  If that is what Congress had intended it would have said so, and courts cannot second guess its decision.  FAIR also does not contest Defendants' remaining arguments requiring dismissal.  For these reasons, this Court should dismiss the complaint with prejudice.

Dated:  September 8, 2025              Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Joseph Richie**
JOSEPH RICHIE
Assistant Attorney General
Atty. Reg. No. 0400615
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-0921 (Voice)
(651) 282-5832 (Fax)
Joseph.Richie@ag.state.mn.us

KATHERINE BIES
Assistant Attorney General
Atty. Reg. No. 0401675
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-0917 (Voice)
(651) 282-5832 (Fax)
Katherine.Bies@ag.state.mn.us

LIZ KRAMER
Solicitor General
Atty. Reg. No. 0325089
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1010 (Voice)
(651) 282-5832 (Fax)
liz.kramer@ag.state.mn.us

*Attorneys For Defendants Tim Walz, Governor of Minnesota in his official capacity; State of Minnesota; Keith Ellison, Attorney General for the State of Minnesota in his official capacity; and the Minnesota Office of Higher Education*

|#6168618-v1