**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,

No. 25-cv-2668 (KMM/DTS)

Plaintiff,

v.

**ORDER**

Tim Walz, *the Governor of Minnesota in*
*his official capacity*, State of Minnesota,
Keith Ellison, *Attorney General for the*
*State of Minnesota in his official capacity*,
and Minnesota Office of Higher
Education,

Defendants.

---

This matter is before the Court on Defendants Governor Tim Walz, Attorney

General Keith Ellison, the State of Minnesota, and the Minnesota Office of Higher

Education's ("MOHE") Motion to Dismiss the Complaint. (Dkt. 9.) For the following

reasons, the Motion is granted.

## I.    BACKGROUND

This lawsuit concerns the interpretation and scope of a piece of federal immigration

law, 8 U.S.C. § 1623. Passed by Congress as part of the Illegal Immigration Reform and

Immigrant Responsibility Act ("IIRIRA"), § 1623 states in relevant part:

> **§ 1623. Limitation on eligibility for preferential treatment**
> **of aliens not lawfully present on basis of residence for**
> **higher education benefits**
>
> **(a) In general**

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). Section 1623 is one of many IIRIRA provisions restricting public benefits for people who are not lawfully present in the United States.

Plaintiff United States filed this Complaint on June 25, 2025 contending that portions of Minnesota law violate § 1623's restrictions and are thus are preempted. The Complaint names MOHE and the State of Minnesota as Defendants, as well as Minnesota Governor Walz and Attorney General Ellison in their official capacities. The United States seeks a declaration and a permanent injunction invalidating these laws as applied to unlawful noncitizens in the United States.

The United States focuses on three Minnesota statutes. The first—and central—provision is Minn. Stat. § 135A.043 ("§ 135A.043" or "Resident Tuition Statute"), which sets forth the criteria necessary to qualify for "Resident Tuition" to attend Minnesota state colleges and universities. It states:

> **135A.043 RESIDENT TUITION.**
> (a) A student, other than [those unrelated here], shall qualify for a resident tuition rate or its equivalent at state universities and colleges if the student meets all of the following requirements:
>
>> (1) high school attendance within the state for three or more years;

2

(2) graduation from a state high school or attainment within the state of the equivalent of high school graduation; and

(3) in the case of a student without lawful immigration status: (i) documentation that the student has complied with selective service registration requirements; and (ii) if a federal process exists for the student to obtain lawful immigration status, the student must present the higher education institution with documentation from federal immigration authorities that the student has filed an application to obtain lawful immigration status.

§ 135A.043.[1] As highlighted by the United States in its Complaint, the Resident Tuition Statute does not require lawful presence in the country to qualify for Resident Tuition. Instead, as long as an undocumented noncitizen attends a Minnesota high school for three or more years, graduates from a Minnesota high school or attains an equivalent, and provides the required documentation, that individual is eligible for "Resident Tuition."

This cornerstone provision is then incorporated into the second statute at issue: Minn. Stat. § 136A.101, subd. 8 ("Resident Student Statute"). Specifically, the Resident Tuition Statute serves as one of ten ways to qualify as a "Resident Student" for purposes of Minnesota law. *See* Minn. Stat. § 136A.101, subd. 8(9). Finally, the definition of "Resident Student" is incorporated as one avenue to qualify for the North Star Promise, Minn. Stat. § 136A.1465, the third statute at issue (the three statutes collectively, "Minnesota statutes"). Passed by the state legislature in 2023, the North Star Promise is a "a state-funded financial aid program administered by [MOHE] that awards free tuition

---

[1]    While not explicitly addressed by either party, the Court assumes that Resident Tuition and the North Star Promise, Minn. Stat. § 136A.1465, constitute "postsecondary education benefit[s]" within § 1623.

and fees in the form of a scholarship to eligible students who attend Minnesota's public postsecondary institutions[.]" (Dkt. 1 ¶ 33.)

Following this trail of statutory nesting dolls from the Resident Tuition Statute through the Resident Student Statute to the North Star Promise affirms that noncitizens without lawful status could qualify for the North Star Promise's free tuition and other benefits. So, the United States argues that the Minnesota statutes violate § 1623 because the statutes provide a benefit to noncitizens on the basis of residence while not providing that benefit to U.S. citizens. (*Id.* ¶¶ 47–48.)

Defendants seek to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Defendants argue that the United States lacks standing to pursue this case against Defendants Walz and Ellison because the two lack the requisite enforcement authority over the Minnesota statutes. Second, Defendants contend that § 1623 violates Minnesota's sovereignty and the Tenth Amendment's prohibition on state commandeering. Third, Defendants contend that § 1623 does not preempt the Minnesota statutes because the provisions do not provide a benefit "on the basis of residence." The Court concludes that § 1623 does not preempt the Minnesota statutes at issue, and therefore grants the motion and dismisses the case.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to

4

raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the Complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts alleged. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), courts "must distinguish between a 'facial attack' and a 'factual attack'" on the courts' jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack assumes that, even if all the facts alleged in the Complaint are true, the court still lacks subject-matter jurisdiction; a factual attack, on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When a defendant raises a facial attack, courts apply the same standard as a motion to dismiss under Rule 12(b)(6). *Osborn*, 918 F.2d at 729 n.6.

## III. DISCUSSION

### A. Standing

The Court first examines whether the United States has standing to pursue this action against Defendants Walz and Ellison.[2] Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2. For this Court to have subject matter jurisdiction, the United States must establish that it has standing to sue as to each defendant. *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). To establish the "irreducible constitutional minimum" of Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). This threshold "requires a showing that each defendant caused his injury and that an order of the court against each defendant could redress the injury." *Hawley*, 866 F.3d at 869; *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("'[P]laintiffs must demonstrate standing for each claim that they press' against each defendant 'and for each form of relief that they seek'") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). At the pleading stage specifically, "the plaintiff must clearly allege facts demonstrating each element" to satisfy their burden. *Spokeo*, 578 U.S. at 338 (cleaned up). And because Defendants raise a facial

---

[2] The Court concludes that the United States has standing to pursue its claim against Defendants State of Minnesota and MOHE. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (listing the "three elements" of constitutional standing). Indeed, counsel for Defendants conceded as much during the December 10, 2025 motion hearing.

challenge to standing here (Dkt. 11 at 24), the Court accepts the Complaint's allegations as true. *Menchaca*, 613 F.2d at 511.

At issue here is whether the United States can satisfy the causation and redressability elements as to Defendants Walz and Ellison.[3] In an action such as this, "the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision."[4] *Hawley*, 866 F.3d at 869 (quoting *Dig. Recognition Network v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015)) (cleaned up). Similarly, a claim is not redressable "when a plaintiff seeks relief against a defendant with no power to enforce a

---

[3] The United States has adequately alleged an injury in fact. *See United States v. Missouri*, 114 F.4th 980, 985 (8th Cir. 2024) ("Interference with the federal government's interest in enforcing federal law is sufficient to establish that [the state law's] implementation injured the United States."), *cert. denied*, 146 S. Ct. 90 (Oct. 6, 2025).

[4] In determining whether a defendant has the "authority to enforce" a challenged legal provision for purposes of standing, the Eighth Circuit has drawn parallels to the showing required by the *Ex Parte Young* exception to sovereign immunity—that the defendant have "some connection" to enforcement. *See Hutchinson*, 803 F.3d at 957 ("[T]he questions of Article III jurisdiction and Eleventh Amendment immunity are related."); *Hawley*, 866 F.3d at 869 ("[T]he two inquiries are similar[.]"); *see Self Advoc. Sols. N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1049 (D.N.D. 2020) ("The *Ex parte Young* inquiry is analogous to the causation requirement for Article III standing."); *Doe v. Piper*, 165 F. Supp. 3d 789, 800–01 (D. Minn. 2016) (equating the two standards). The Eighth Circuit has gone so far as to hold that a requisite showing of "some connection" to enforcement is sufficient to satisfy Article III standing's requirements. *See Hutchinson*, 803 F.3d at 957 ("This court concluded in one case that where state officials had 'some connection with the enforcement' of a state law for purposes of the *Ex Parte Young* doctrine, then the case or controversy requirement of Article III was satisfied.") (citing *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006)). While state sovereign immunity is not an issue here, *e.g.*, *Alden v. Maine*, 527 U.S. 706, 755 (1999) (discussing that state sovereign immunity does not apply when the federal government sues a state), the congruency between the two standards persuades the Court to look to caselaw applying the "some connection" standard for guidance on the issue of causation and redressability in this context.

challenged statute." *Hutchinson*, 803 F.3d at 958 (quotation omitted). On a motion to dismiss, however, "a federal court need only consider whether a plaintiff has plausibly identified a 'potentially proper party for injunctive relief.'" *Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790, 803 (D. Minn. 2021) (quoting *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005)) (emphasis omitted).

Defendants claim that the Governor and Attorney General "play no role with respect to the challenged statutes." (Dkt. 11 at 24.) None of the Minnesota statutes mention either official, and nowhere in the Complaint does the United States allege specific actions of involvement by either official. (*Id.* at 24–26.) But the United States points to other provisions of Minnesota law, not cited in the Complaint, allegedly providing the Governor and Attorney General a general authority to enforce Minnesota laws. As to the Governor, the United States cites the Minnesota Constitution's Take Care Clause, Minn. Const. art. V, § 3,[5] the Governor's appointment power over the Commissioner of MOHE, and Walz's public statements highlighting the North Star Promise. (Dkt. 15 at 21–24.) As for the Attorney General, the United States cites Minn. Stat. § 8.01, a statute that defines the Attorney General's ability to appear in ongoing matters in which the state's interests are involved. (Dkt. 15 at 21.) The Court considers each theory in turn and concludes that these provisions are insufficient to make Governor Walz or Attorney General Ellison proper defendants in this case.

---

[5] The Take Care Clause of Article V § 3 of the Minnesota Constitution states: "[The Governor] shall take care that the laws be faithfully executed."

*Governor Walz*

First, the United States contends that Governor Walz's Take Care authority creates the necessary causal link to the Minnesota statutes. This issue, however, has been considered and this argument rejected by the Eighth Circuit on at least three different occasions. *See Church v. Missouri*, 913 F.3d 736, 748–49 (8th Cir. 2019) (rejecting the argument that the Missouri governor's "supreme executive power" and duty to "take care that the laws are distributed and faithfully executed" were a sufficient connection to enforce the state's Sixth Amendment obligations without a specific "enforcement mechanism"); *Hawley*, 866 F.3d at 870 ("No provision in [the Missouri statutes] defining his executive authority specifically authorizes the governor to enforce the [statutes at issue]. The Missouri Constitution confers upon the governor the duty to 'take care that the laws are distributed and faithfully executed,' but such a general executive responsibility is an insufficient connection to the enforcement of a statute . . . .") (citations omitted); *Bio Gen LLC v. Sanders*, 142 F.4th 591, 605 (8th Cir. 2025) (rejecting the argument that the Arkansas governor "has a responsibility as chief executive for the enforcement of the criminal laws of the state" because "this general take care responsibility is not a sufficiently specific method of enforcement"). The United States makes no argument suggesting Minnesota's Take Care Clause or constitutional design meaningfully differ from Missouri's or Arkansas's, and the Court finds no distinction. The Take Case Clause is not enough to make Governor Walz a proper defendant to this action.

The United States's other two theories are similarly precluded by Eighth Circuit precedent. The United States contends that the Governor's authority over the

9

Commissioner of MOHE and his public comments highlighting the North Star Promise connect the Governor to the Minnesota statutes' enforcement. But in *Minnesota Chapter of Associated Builders & Contractors v. Ellison*, the Eighth Circuit specifically rejected the assertion that "[Governor Walz's] speeches combined with the ability to remove a commissioner is enough to" establish "some connection" to enforcement. 153 F.4th 695, 698–99 (8th Cir. 2025) (cleaned up). The United States makes no attempt to distinguish *Minnesota Chapter*, and the Court finds it forecloses their argument. The United States lacks standing as to Governor Walz.

### Attorney General Ellison

The Court reaches the same conclusion as to Attorney General Ellison. The United States's sole contention here is that Minn. Stat. § 8.01 provides Ellison a general law enforcement authority, creating the necessary causal link to the Minnesota statutes. The Eighth Circuit has held that a state official's general law enforcement authority may be sufficient to establish causation only "if that authority gives the [official] *methods* of enforcement." *Church*, 913 F.3d at 749. This requires "plaintiffs [to] identify a method of enforcement that the officer has the authority to wield." *Bio Gen LLC*, 142 F.4th at 604.

But the United States does not identify a method in § 8.01 by which the Attorney General can enforce the Minnesota statutes at issue. In relevant part, § 8.01 states:

> The attorney general shall appear for the state in all causes in the supreme and federal courts wherein the state is directly interested; also in all civil causes of like nature in all other courts of the state whenever, in the attorney general's opinion, the interests of the state require it.

10

The United States suggests that this provision serves as a catchall cause of action, allowing the Attorney General to proactively enforce any law of Minnesota. But on its face, § 8.01 speaks only to the Attorney General's ability to intervene in certain matters. Not only does the United States not contend that this case is one of those matters, it cites no authority supporting its interpretation of § 8.01 as giving rise to a universal cause of action. Tellingly, nor does the United States point to any other place in Minnesota law providing the Attorney General a cause of action regarding the Minnesota statutes specifically.

The Eighth Circuit's decision in *Digital Recognition Network, Inc. v. Hutchinson* supports this conclusion. 803 F.3d 952. There, the court concluded that the plaintiff lacked standing to sue the defendant-attorney general because he could not enforce the statute at issue, saying "[w]hile the attorney general may intervene and defend the constitutionality of the [state law] . . . , the attorney general does not initiate enforcement or seek relief" from the statute. *Id.* at 958. The same is true here: § 8.01 provides the Attorney General a mechanism to intervene to protect state interests but does not provide him grounds to enforce the Minnesota statutes.[6] Therefore, the Minnesota statutes are not fairly traceable to or redressable by the Attorney General. Indeed, at least one court in this District has applied Eighth Circuit precedent to reject the same argument regarding a comparable piece of Minnesota law. *See AbbVie, Inc. v. Ellison*, 777 F. Supp. 3d 971, 976–77 & n.5 (D.

---

[6] This is also the distinguishing point between this case and *Iowa Migrant Movement for Justice v. Bird*, where the Eighth Circuit held that the attorney general did have enforcement power over an Iowa law because it gave her the authority to "prosecute all actions in which the state may be a party or interested[.]" 157 F.4th 904, 915 (8th Cir. 2025) (quoting Iowa Code § 13.2(1)(b)) (cleaned up).

Minn. 2025) (holding that the Attorney General's "general constitutional powers" and authority via Minn. Stat. § 8.31 to "investigate violations of the law of [Minnesota] respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade" did not "provide a sufficient connection" to enforcement of a pharmaceutical distribution statute because "[t]here [was] no indication that this provision is meant to be a catch-all to authorize the Attorney General to enforce any statute that does not name an enforcement entity").

Without an identifiable method to enforce the Minnesota statutes, the United States falls short of providing the connection necessary to establish standing as to Attorney General Ellison.[7] *See Balogh v. Lombardi*, 816 F.3d 536, 543 (8th Cir. 2016) ("Thus, the [plaintiff's] injury is not fairly traceable to the [official] because he does not possess any statutory authority to enforce [the provision].").

\* \* \*

Because the United States has not sufficiently alleged that Governor Walz or Attorney General Ellison have enforcement authority over the Minnesota statutes, it has

---

[7] In at least one case, the Eighth Circuit has relied in part on § 8.01 to conclude that the Minnesota Attorney General is a proper defendant, but that case is not on point here. In *281 Care Committee v. Arneson*, the Eighth Circuit considered § 8.01 when holding that the Attorney General had "some connection" to a law criminalizing certain election-related conduct. 638 F.3d 621, 632 (8th Cir. 2011). But that conclusion was based on the "three-fold connection" between the election law and the Attorney General, including § 8.01, a provision empowering the Attorney General to act in certain criminal cases, and another requiring him to defend the state agency at issue. *Id.* Similarly, multiple district courts have concluded that § 8.01's clauses specifying the Attorney General's involvement in *criminal* prosecutions do create a sufficient connection. *See Northland Baptist Church of St. Paul*, 530 F. Supp. 3d at 804; *Minn. Voters All. v. Walz*, 492 F. Supp. 3d 822, 832–33 (D. Minn. 2020). But criminal statutes are not at issue here.

12

not established the required traceability or redressability to establish Article III standing. The Court grants the Motion and dismisses the Complaint as to Defendants Walz and Ellison without prejudice. *See Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004) (stating that a dismissal solely on jurisdictional grounds should be without prejudice).

**B.      Section 1623**

The Court next considers whether § 1623 preempts the three Minnesota statutes at issue. The preemptive effect of § 1623 is an issue of first impression in this Circuit, and it has been scantly considered by either federal or state courts. However, using the tools of statutory interpretation and the precedent available, the Court finds that § 1623 does not preempt the Minnesota statutes.

The Supremacy Clause of the U.S. Constitution designates federal law as "the supreme Law of the Land[.]" U.S. Const. art. VI, cl. 2. So, when federal and state law conflict, "state law must yield[.]" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) ("[S]tate laws that conflict with federal law are without effect.") (cleaned up). "[The] inquiry into the scope of a statute's pre-emptive effect is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Good*, 555 U.S. at 76 (cleaned up). Congress can preempt state law in three ways: (1) by express statutory language, (2) by occupying the entire legislative or regulatory field, or (3) by conflicting with state law. *See WinRed, Inc. v. Ellison*, 59 F.4th 934, 941 (8th Cir. 2023). If federal law contains an express preemption clause, courts "focus on the plain wording of the clause, which necessarily

contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). The party asserting preemption bears the burden of establishing that it applies. *Williams v. Nat'l Football League*, 582 F.3d 863, 880 (8th Cir. 2009).[8] In this case, the United States relies solely on express preemption, arguing that § 1623 expressly forbids state laws like Minnesota's.

The issues raised here present questions of statutory interpretation because the Court must interpret both § 1623 and the Minnesota statutes. That task "begins with the statute's plain language," and when "the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024) (quotation omitted). First, courts must "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *LaCurtis v. Express Med. Transps., Inc.*, 856 F.3d 571, 578 (8th Cir. 2017) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). To decide whether the statutory language is plain or ambiguous, courts refer "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson*, 519 U.S. at 341); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) ("But oftentimes the 'meaning—or ambiguity—of certain words or

---

[8] The parties dispute whether this case implicates the States' police power over education. When attempting to preempt such police powers, Congress must speak with a higher degree of clarity than in other preemption cases. *E.g.*, *R. J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1176 (8th Cir. 2023) ("When addressing express or implied preemption we begin 'with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'") (quoting *Good*, 555 U.S. at 77). Here, the Court need not decide this issue because the Minnesota statutes are not preempted by § 1623 under either standard.

phrases may only become evident when placed in context.'") (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). To evaluate congressional intent, courts use the ordinary meaning of terms in the statute. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022) (explaining that the Supreme Court interprets statutory language "according to its ordinary, contemporary, common meaning") (quotation omitted).[9]

Section 1623 provides, in relevant part:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). The question the Court must answer is whether this statute preempts Minnesota's Resident Tuition Statute.

Defendants challenge the preemptive scope of two provisions of § 1623 specifically: first, "on the basis of residence within a State," and the second, "unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." For the Resident Tuition Statute (and thus the Minnesota statutes collectively) to be preempted by § 1623, it must conflict with both clauses of

---

[9] Amicus Federation for American Immigration Reform cites parts of IIRIRA's legislative history in its opposition to Defendants' Motion. (Dkt. 22 at 5–6 & n.2.) But "[w]hen a statute is plain and unambiguous, as this one is, the courts cannot resort to legislative history to interpret it." *Cont. Freighters, Inc. v. Sec'y of U.S. Dep't of Transp.*, 260 F.3d 858, 862 (8th Cir. 2001); *see Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 810 (8th Cir. 2021) ("It goes without saying that legislative history cannot overcome the statutory text.").

federal law by providing for eligibility on the basis of residence in Minnesota *and* by excluding non-Minnesotans on the same grounds. So, if either of the clauses do not preempt the Resident Tuition Statute, then the Minnesota law is not preempted, and dismissal of the action is required. If both clauses of § 1623 preempt the Resident Tuition Statute, then the Motion fails. *Williams*, 582 F.3d at 880. The Court turns to these two provisions below.

### 1. "[O]n the basis of residence"

The parties disagree about whether the Resident Tuition Statute determines eligibility "on the basis of residence" as that phrase is used in § 1623. Defendants argue that Resident Tuition is not determined by residency in Minnesota. Instead, the Resident Tuition Statute determines eligibility based on residency-neutral criteria, specifically, where a student attended and graduated high school. So, Defendants assert that Minn. Stat. § 135A.043 is both under and overinclusive of residency because some Minnesota-resident students won't qualify for Resident Tuition while some out-of-state students will. Defendants point to three categories of covered out-of-state students: (1) students from neighboring States or Canada who attend a Minnesota high school; (2) nonresidents who attend a Minnesota boarding school; and (3) a student who attended and graduated from a Minnesota high school who then moves out of state at the time of their eligibility determination. (Dkt. 11 at 13; Dkt 23 at 5.)

The United States responds that the Resident Tuition Statute's criteria, while not explicitly tied to residency, are nonetheless "tantamount to a residence requirement." (Dkt. 15 at 10.) The United States argues that, because Minnesota makes public school compulsory and generally requires in-district residency to attend, the criteria set forth "are

16

simply residency requirements by another name[.]" (*Id.*) And even if a "[l]imited" number of out-of-state students can meet these criteria, the Resident Tuition Statute "principally cover[s] Minnesota residents." (*Id.* at 10–11.)

The Court starts with the statutory interpretation of "on the basis of residence," which both parties agree can be interpreted based on its plain language. First, courts have consistently interpreted "on the basis of" to require a but-for causal link.[10] *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020) (noting that "on the basis of" is "strongly suggestive of a but-for causation standard") (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)); *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024) ("Several circuits have concluded that this amended language—'on the basis of'—invokes but-for causation.") (collecting cases); *cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007) ("In common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition."); *Murguia v. Childers*, 81 F.4th 770, 775 (8th Cir. 2023) ("'On the ground of' means but-for causation."). The only party to specifically address this language, the United States, agrees "on the basis of" in § 1623 requires a but-for causal relationship between residency and eligibility for postsecondary education benefits. (Dkt. 15 at 12 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020)).

---

[10] But-for causation means that "an action 'is not regarded as a cause of an event if the particular event would have occurred without it.'" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 265 (5th ed. 1984)).

17

As for "residence," IIRIRA helpfully defines the term: "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33); *see* 8 U.S.C. § 1641(a) (incorporating § 1101(a) definitions into that legislative chapter). Read all together, a state statute would be preempted by the first portion of § 1623 if it provides postsecondary education benefits to unlawful noncitizens because their principal, actual dwelling place is within the State.

So, can a student be eligible for Resident Tuition if their principal, actual dwelling place is outside of Minnesota? The answer is yes. The Resident Tuition Statute sets forth only two criteria relevant to this point: (1) that the student attended a Minnesota high school for three or more years; and (2) that the student graduated from a Minnesota high school (or achieved the equivalent). While these criteria certainly require some connection to Minnesota, they do not require Minnesota residency; the Resident Tuition Statute simply does not make eligibility for postsecondary education benefits contingent upon the location of a person's "principal, actual dwelling place in fact." 8 U.S.C. § 1623. As Defendants point out, there are multiple ways a student could qualify for Resident Tuition without residing in Minnesota, such as attending a Minnesota high school while living in a neighboring state, or by attending a Minnesota boarding school. Whether the number of those students is large or small is irrelevant—unless the availability of the benefit provided by the State depends on residency, there is no but-for causation. And without but-for causation, § 1623 cannot preempt the Resident Tuition Statute.[11]

---

[11] Despite the United States's contention to the contrary, the Minnesota statutes' use of "resident" in two of the statutes' titles does not undermine the statutes' plain language.

18

The sparse relevant caselaw also supports this interpretation, specifically *Martinez v. Regents of the University of California*, 241 P.3d 855 (Cal. 2010). While non-binding, the decision is on all fours with the instant case. There, the California Supreme Court considered the preemptive effect of § 1623 on nearly identical state statutory language that required for resident tuition eligibility: "(1) High school attendance in California for three or more years [and] (2) Graduation from a California high school or attainment of the equivalent thereof." *Id.* at 1286 (quoting Cal. Educ. Code § 68130.5(a) (2001)) (cleaned up). The court concluded that the California statute was not preempted because resident tuition was not determined based on residence, but on "*other* criteria." *Id.* at 1290. The court wrote:

> [Resident tuition] cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it. Every nonresident who meets [the statute's] requirements—whether a United States citizen, a lawful alien, or an unlawful alien—is entitled to [the postsecondary education benefit]. Attending high school in California for at least three years and meeting the other requirements are not the functional equivalent of residing in California. Some American citizens who are not residents of California may also be eligible for the exemption.

*Id.* In support, the court pointed to the same three sets of qualifying nonresidents that Defendants cite here. *Id.* at 1291. Given the substantial similarities between the California statute and Minn. Stat. § 135A.043, *Martinez* is particularly compelling.

---

*Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("The title of a statute cannot limit the plain meaning of the text.") (cleaned up); *United States v. Lewis*, 519 F.3d 822, 825 (8th Cir. 2008) ([S]ection titles of an act cannot alter the statute's plain meaning[.]").

The caselaw marshalled by the United States is less persuasive. The United States cites *Young Conservatives of Texas Foundation v. Smatresk* in support of its interpretation of § 1623. 73 F.4th 304 (5th Cir. 2023). There, the Fifth Circuit rejected the argument that Texas's *nonresident* tuition statute was preempted by § 1623, but stated in passing that "a different, *unchallenged* portion of Texas' scheme seems to conflict with § 1623(a)," in seeming reference to its resident tuition statute. *Id.* at 314. But the Court sees little persuasive value in dicta about an unidentified "portion" of Texas law that was not the subject of that court's analysis. *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959) (treating "language . . . in dicta [as] neither binding nor persuasive"). The United States's cites to *Equal Access Education v. Merten*, 305 F. Supp. 2d 585 (E.D. Va. 2004) fare no better. That case dealt with the preemptive implications of § 1623 for a policy promulgated by the Virginia Attorney General to report suspected undocumented students to federal immigration officials. *Id.* at 607–08. But to the extent the *Merten* court provided analysis on the issue, it is unhelpful here because the policy is clearly distinct from the Minnesota statutes.

The United States also points the Court to two recent district court cases: *United States v. Texas*, No. 7:25-cv-00055, 2025 WL 1583869 (N.D. Tex. June 4, 2025) and *United States v. Oklahoma*, No. 25-cv-265-RAW-DES, 2025 WL 2815662 (E.D. Okla. Aug. 7, 2025), *R&R adopted*, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025). In both cases, the courts entered consent judgments invaliding the States' respective tuition statutes, following agreements between those States and the federal government. Aside from the fact they are non-binding, neither case is persuasive because the issues were not contested

and thus the courts did not need to engage in meaningful analysis. *See Christmon v. B&B Airparts, Inc.*, 735 F. App'x 510, 514 n.2 (10th Cir. 2018) (unpublished) ("As negotiated documents lacking legal analysis, these consent decrees do not constitute persuasive authority."); *United States v. Michigan*, 131 F.4th 409, 425 (6th Cir. 2025) ("[C]ase law involving consent decrees lack binding effect.").

In *United States v. Texas*, the district court eventually conducted substantive analysis of the preemptive scope of § 1623 in an order issued months after the consent judgment, denying as futile an interested party's request to intervene for the purpose of vacating the judgment. No. 7:25-cv-00055-O, Doc. No. 88 (N.D. Tex. Aug. 15, 2025) (Order denying Motions to Intervene). The Court found that allowing intervention would serve no purpose because the Fifth Circuit's decision in *Young Conservatives* foreclosed the argument. (*Id.* at 8–11.) But this order highlights two key differences between that action and the instant case. The first is that *Young Conservatives* is not binding here. And second, the Texas resident tuition statute is distinct from Minn. Stat. § 135A.043 because the Texas law explicitly ties eligibility to residency. Texas Educ, Code §§ 54.051(m) (linking eligibility for resident tuition rates to the student's ability to "establish[ Texas] residency), 54.052(a) (focusing eligibility on the student's "domicile"). The Minnesota statutes, as described above, do not.

* * *

The plain text of § 1623 is clear: it does not preempt the Minnesota statutes because the Resident Tuition Statute does not determine eligibility for Resident Tuition on the basis of residence. Defendants' Motion is granted.

21

**2. "[U]nless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident"**

The Court has already found that preemption does not apply because the Minnesota statutes do not run afoul of the "on the basis of residence" provision of § 1623. But the United States's claim of preemption also fails because the second contested provision similarly lacks applicability to the Minnesota statutes. Section 1623 prohibits a person who is not here legally from receiving such a residency-based postsecondary benefit "unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) ("Citizenship Eligibility Clause"). As discussed, Minnesota does not determine eligibility for Resident Tuition based on residence, so § 1623 does not preempt Minn. Stat. § 135A.043. But even if it did, a citizen who is not a Minnesota resident is eligible for Resident Tuition in Minnesota, so § 1623 still lacks preemptive effect.

Defendants argue the fact that some nonresidents are eligible for Resident Tuition in Minnesota satisfies the requirements of the Citizenship Eligibility Clause because "a citizen" is eligible. (Dkt. 11 at 17–20.) Defendants contend that the plain language of § 1623 only requires "a" citizen to be eligible, meaning "one" or "any." And because three classes of citizen nonresidents can be eligible, that requirement is met. The United States, on the other hand, argues that "a" means "all," requiring all nonresident citizens to be eligible for Resident Tuition should a noncitizen be. (Dkt. 15 at 13 ("[T]he best reading of the statute is that if illegal aliens are eligible for in-state tuition on the basis of residency,

22

then *all* U.S. citizens must be eligible for the same[.]").) Again, Defendants have the better argument.

Based on the text and precedent, the use of "a" in § 1623 means "one" or "any." Let's start with the word's plain meaning. Colloquially, "a" is singular. While "a" certainly has numerous different uses, it was typically employed at the time of IIRIRA's passage in 1996 to mean "one" or "any" in like contexts. *See* The American Heritage Dictionary 1 (3d ed. 1994) (defining "a" to mean "one" or "any"); Random House Unabridged Dictionary 1 (2d ed. 1993) (same).[12] Reading "a" in context of the whole clause also supports a singular designation, as that "citizen or national" mentioned in the statute is later referred to as "*the* citizen or national," rather than "these citizens or nationals." Moreover, the caselaw is nearly unanimous on this point: "a" means "one" or "any." *Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021) ("The Dictionary Act does not transform every use of the singular 'a' into the plural 'several.' Instead, it tells us only that a statute using the singular 'a' can apply to multiple persons, parties, or things."); *Sports v. Top Rank, Inc.*, 954 F.3d 1142, 1148 (8th Cir. 2020) ("We only need to read 'a' to mean 'any,' which is within its ordinary meaning."); *United States v. Thigpen*, 848 F.3d 841, 845 (8th Cir. 2017) ("[I]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'")

---

[12] The Court sees no reason to think that meaning has changed. *See* Dictionary, A, Merriam-Webster, https://www.merriam-webster.com/dictionary/a (last visited Mar. 27, 2026); *see also* Dictionary, Indefinite Article, Merriam-Webster, https://www.merriam-webster.com/dictionary/indefinite%20article (last visited Mar. 27, 2026) ("The *indefinite article* is *a*; it identifies a single, but not specific, person or thing.").

23

(quoting *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015)). Indeed, if Congress intended § 1623 to include all non-residents, it would have used "all."

In support of its position, the United States points to one case from the U.S. Court of the Appeals for the Federal Circuit referring to "a" as an "indefinite or generalizing force." (Dkt. 15 at 13 (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003)).) But the United States misreads this statement as suggesting that "a" can mean "all." Indeed, a Federal Circuit case from 20 years after the *Warner-Lambert* decision, collecting other Federal Circuit cases in support, states: "use of 'a' or 'an' before a noun naming an object is understood to mean to 'one or more' unless the context sufficiently indicates otherwise." *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1345 (Fed. Cir. 2023).

Under Minnesota's statutory scheme, nonresidents can—and do—qualify for resident tuition: by living in a neighboring state and attending Minnesota high schools, attending a Minnesota boarding school, or attending and graduating from a Minnesota high school before moving out of state. So even if the Resident Tuition Statute contained a de facto residency requirement, "a citizen or national" is eligible for Resident Tuition without regard to that individual's residence.

* * *

In sum, § 1623 does not preempt Minn. Stat. § 135A.043. Because of the relationship between the three Minnesota statutes at issue, it also cannot be read to preempt Minn. Stat. § 136A.101 or § 136A.1465. Therefore, Defendants' Motion is granted and the United States's claims against State of Minnesota and MOHE are dismissed with prejudice.

24

*See Ahmed v. United States*, 147 F.3d 791, 797 (8th Cir. 1998) (stating that a dismissal for failure to state a claim "is an adjudication on the merits").[13]

### ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss (Dkt. 9) is **GRANTED**.

2. Plaintiff United States of America's Complaint (Dkt. 1) is **DISMISSED WITH PREJUDICE** for failure to state a claim.

   **Let judgment be entered accordingly**.

Dated: March 27, 2026                      *s/Katherine Menendez*_____
                                            Katherine Menendez
                                            United States District Judge

---

[13] Since § 1623 does not preempt the Minnesota statutes, the Court declines to consider Defendants Tenth Amendment commandeering argument because it is not necessary to the resolution of the case. *See In re Snyder*, 472 U.S. 634, 642 (1985) ("We avoid constitutional issues when resolution of such issues is not necessary for disposition of a case."); *Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable."); *Chavez-Castillo v. Holder*, 771 F.3d 1081, 1085 (8th Cir. 2014) ("We need not reach these constitutional questions because they are not necessary to resolving this case.").